IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENN-CHING LUO | : | CIVIL ACTION |
| | : | |
| v. | : | **\* LEAD DOCKET \*** |
| | : | |
| OWEN J. ROBERTS SCHOOL | : | NO. 14-6354 |
| DISTRICT, et al. | : | |

_____

| | | |
|---|---|---|
| JENN-CHING LUO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OWEN J. ROBERTS SCHOOL | : | NO. 16-6568 |
| DISTRICT, et al. | : | |

MEMORANDUM

Bartle, J.                                      December 11, 2024

In Civil Action No. 16-6568 (<u>Luo IV</u>),[1] Luo brought
common-law civil and Section 1983 claims against the School
District, the Department of Education, various employees of the
School District, its counsel, and Hearing Officer "Jake"
McElligott.[2]  In addition, he appealed one administrative
decision pursuant to the IDEA.  Defendants moved to dismiss.  On
October 30, 2023, the court granted these motions and dismissed

_____

1.   This memorandum and order only concerns claims made in <u>Luo
IV</u> but will also be docketed in <u>Luo I</u>, Civil Action No. 14-6354,
because <u>Luo IV</u> has been consolidated with it for administrative
purposes by Judge Petrese B. Tucker before her retirement.

2.   According to the administrative decision, dated September
30, 2016, the Hearing Officer's name is Michael J. McElligott.

all claims.  Memorandum at 12, <u>Luo</u>, Civ. A. No. 16-6568 (Doc. # 39) (E.D. Pa. Oct. 30, 2023) ("Memorandum (Oct. 30, 2023)").[3]

On September 16, 2024, our Court of Appeals affirmed in part, and vacated and remanded in part this court's judgment. The Court affirmed as to the dismissal of the civil claims but remanded for further consideration as to the denial of the administrative appeal Luo made pursuant to the IDEA.  <u>Luo v. Owen J. Roberts Sch. Dist.</u>, No. 24-1030, 2024 WL 199008, at *2-3 (3d Cir. Sept. 16, 2024) (per curiam) (non-precedential).

Before the court are two motions.  The first is the motion of defendant Owen J. Roberts for judgment on the administrative record (Doc. # 56).  Plaintiff Jenn-Ching Luo responded with a document, entitled "Cross-Motion For Judgment And Response in Opposition to Owen J. Roberts School District's Motion for Judgment on the Administrative Record" (Doc. # 57).

I

Pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1412, <u>et seq.</u> ("IDEA"), parents may present a complaint to the local educational agency

> (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child; and

---

3.  All references to docket entries herein are to <u>Luo IV</u>, Civil Action No. 16-6568 unless otherwise noted.

> (B) which sets forth an alleged violation
> that occurred not more than 2 years
> before the date the parent or public
> agency knew or should have known about
> the alleged action that forms the basis
> of the complaint, or, if the State has an
> explicit time limitation for presenting
> such a complaint under this subchapter,
> in such time as the State law allows
> . . . .

20 U.S.C. § 1415(b)(6).  Such a complaint, which is identified

as a "due process complaint" in the statute, is adjudicated via

an impartial due process hearing which shall be conducted by the

state or local educational agency as determined by state law.

Id. at (f)(1)(A).  In Pennsylvania, such hearings are conducted

by the Office of Dispute Resolution.  In Luo's case, he

presented a due process complaint concerning his son B.L. on

June 22, 2016 and Hearing Officer McElligot adjudicated it.

Hearing Officer McElligot rendered his decision on September 30,

2016.

        The IDEA directs a hearing officer to make its

decision on "substantive grounds based on a determination of

whether the child received a free appropriate public education"

("FAPE").  Id. at (f)(3)(E)(ii).  When a due process complaint

alleges that procedural violations impeded a child's right to a

FAPE, such as Luo does in this action,

> [A] hearing officer may find that a child
> did not receive a free appropriate public
> education only if the procedural
> inadequacies--

-3-

(I)   impeded the child's right to a free
      appropriate public education;

(II)  significantly impeded the parents'
      opportunity to participate in the
      decisionmaking process regarding the
      provision of a free appropriate public
      education to the parents' child; or

(III) caused a deprivation of educational
      benefits.

Id. at (f)(3)(E)(ii) (emphasis added).

The IDEA provides aggrieved parties the right to bring a civil action challenging the conclusions of the hearing officer. See id. at (i)(2). Plaintiff has brought such an action.

When a party, either a parent or the local educational agency, challenges the conclusions of an administrative hearing, the court:

(i)   shall receive the records of the
      administrative proceedings;

(ii)  shall hear additional evidence at the
      request of a party; and

(iii) basing its decision on the
      preponderance of the evidence, shall
      grant such relief as the court
      determines is appropriate.

Id. at (i)(2)(C). The court has received and reviewed the records of the administrative proceeding. No party has requested the court to hear additional evidence.

An appeal of an administrative decision made pursuant to the IDEA is subject to modified de novo review of the administrative record. S.H. v. State-Operated Sch. Dist. of

Newark, 336 F.3d 260, 270 (3d Cir. 2003).  The court must give
"due weight" and "deference to the findings" of the hearing
officer.  <u>D.S. v. Bayonne Bd. of Educ.</u>, 602 F.3d 553, 564 (3d
Cir. 2010).  Factual findings of the hearing officer are
considered prima facie correct.  <u>Id.</u>  Unless non-testimonial
extrinsic evidence in the record would justify a contrary
conclusion, the hearing officer's credibility determinations
based on live testimony are given "special weight."  <u>A.C. v.
Owen J. Roberts Sch. Dist.</u>, 554 F. Supp. 3d 620, 624 (E.D. Pa.
2021).  Any legal conclusions made by the hearing officer are
reviewed <u>de novo</u>.  <u>Id.</u>

Plaintiff Jenn-Ching Luo, as the party challenging the
administrative decision, bears the burden of persuasion as to
each claim.  <u>Ridley Sch. Dist. v. M.R.</u>, 680 F.3d 260, 270 (3d
Cir. 2012).

II

The administrative appeal in Civil Action No. 16-6568
(<u>Luo IV</u>) concerns a decision made by Hearing Officer Michael
McElligott on September 30, 2016.  The following facts were
determined by the hearing officer and therefore are presumed to
be prima facie correct.

On June 6, 2016, the Individual Education Plan ("IEP")
team of B.L. met to consider the results of an independent
educational evaluation ("IEE") report issued in May of 2016 for

-5-

plaintiff's son B.L.  The independent evaluator, Dr. Michele
Robins, was unable to attend the meeting in person.[4]  She
participated telephonically.

        That same afternoon, Andreas Schushke, the Director of
Educational Programs at Camphill Special School ("Camphill"),
circulated a draft summary of the discussion that took place at
the IEP meeting.  On June 9, Geoffrey Ball, the Special
Education Supervisor at Owen J. Roberts School District, made
updates to that summary and circulated his own version to the
group.  On June 10, Luo provided his own input to Ball's
summary.  On June 13, the private school administrator emailed
Luo and Ball a draft IEP "including [their] additions and
responses to [his] initial summary."  On June 14, the private
school administrator emailed a second version of the draft,
which incorporated certain changes by Ball that included moving
Luo's comments to the "parental input" section.

---

4.   The administrative record makes clear that the parties
intended the IEP meeting to occur between the date Dr. Robins
finalized the IEE, on or about May 12, 2016, and the end of the
school year in mid-June.  However, Dr. Robins was out of state
during that interval.  On May 16, she notified Luo that she
could not attend in-person any of the dates suggested by
Camphill Special School, B.L.'s educational placement.  On May
18, Kristin Kurtz, who works at Camphill, reached out to Luo to
notify him of the date that was chosen.  Luo agreed to this date
and did not object to Dr. Robins' telephonic participation until
after the meeting.

On June 16, Ball directed Jennifer McEvoy, who works in the IEP office at Camphill, to edit the draft language. At the hearing, she testified that he requested that she "move[] some of the information to different recommendations." As she did not regularly work on B.L.'s IEP, Ball came to her office to explain more clearly the changes he wished to be made. After she did so, she emailed the report to Ball to confirm that these changes were correctly inputted.

McEvoy testified that after those changes were made she emailed this version to Luo and Ball and identified it as the student's "final IEP." The School District then provided Luo a Notice of Recommended Educational Placement ("NOREP")[5] which notified him that, absent objection by B.L.'s parents, the IEP would be implemented. At this point, Luo was able to provide consent or object to the IEP.

Luo, in response to this final IEP, asked why the IEP had been revised multiple times. On June 22, 2016, Luo filed a due process complaint alleging that he had been denied meaningful participation at the June 6, 2016 IEP meeting. He

_____

5.   A NOREP is the customary form of notice which Pennsylvania local educational agencies use to inform a parent of its proposed changes to a child's IEP and requests parental consent for the proposed action.  These notices advise that the local educational agency will implement the proposed changes unless the parent indicates disapproval of the recommended action, requests an informal meeting or mediation, or files a due process complaint regarding the change.

-7-

formally rejected the NOREP on June 25, 2016.  Luo maintained both that the independent evaluator failed to participate fully in the meeting and that Luo did not have sufficient involvement in the drafting of the IEP team meeting summary.

Hearing Officer McElligot held two hearings on Luo's due process complaint, on August 23 and September 7.  During these hearings, Luo and the School District questioned Ball, McEvoy, and Schushke.  Each party was permitted equal time to question witnesses.  Additionally, Luo was permitted to provide his own statement regarding the IEP meeting and his allegations.

Hearing Officer Michael McElligott found that Luo had not been denied meaningful participation in the June 6, 2016 IEP team meeting.  He also found that each draft included "the verbatim updates/revisions offered by both parties" and that the changes were not substantive.

He ordered that the June 16, 2016 IEP be amended simply to move language to reflect better the June 13 draft circulated by the special education administrator of Camphill. He also ordered that the IEP not be implemented until the IEP team met in person with the independent evaluator on or before November 30, 2016.  Otherwise no changes were made.

III

Luo lodged an appeal of this officer's decision by filing his complaint in this court on December 21, 2016.  In his complaint, Luo outlines myriad reasons to overturn the September 30, 2016 decision.  The court will address each contention taking into consideration the administrative record.

First, Luo avers that McElligott did not rule on whether the IEP team "completely review[ed] the IEE report."  He does not provide further detail as to how this review was faulty.  The Hearing Officer found that "the recommendations of the IEE were discussed" and that the independent evaluator "participated by telephone but was not overly expressive."  The Hearing Officer also found that "while the evaluator participated to some degree, that person's participation was not deep or comprehensive."  Upon a review of the administrative record, the court agrees with Hearing Officer McElligot's factual findings.

Luo is correct in noting that the local educational agency failed to adopt each recommendation contained in the IEE.  However, the IDEA only requires that results of an evaluation "be considered" and does not mandate that such results be implemented.  See, e.g., 34 C.F.R. § 300.502(c)(1).  Accordingly, the court concludes that Luo has failed to show that the team failed to review the IEE report.

-9-

Additionally, Hearing Officer McElligott addressed Luo's concern that the IEP team had failed to review fully the IEE report.  His order required the parties "re-convene . . . for the in-person participation of the independent evaluator who issued the May 2016 IEE and the other members of the IEP team who participated in the June 6th IEP meeting."  The court finds that this decision adequately addressed any purported failure of the IEP team to review completely the IEE report.

Next, Luo argues that the Hearing Officer did not consider that "the evaluator's recommendations were orally rejected without a report or data to contest its accuracy or appropriateness."  The administrative record shows that the IEP team made its determinations on the basis of B.L.'s preexisting educational goals and attainment.  In addition, McElligot's requirement that the IEP team meet once more provided Luo an opportunity for further discussion of these recommendations with B.L.'s IEP team.

Luo, in addition, contends that McElligott "ignored" Section 1415(f) of the IDEA by permitting the independent evaluator to participate in the meeting via telephone without his consent.  The court previously addressed his complaint under Section 1415(f), stating:

> The IDEA does not require a specific manner
> of attendance by participants in an IEP
> meeting.  In fact, IDEA encourages

-10-

> alternative means of participation.  20
> U.S.C. § 1414(f).  This subsection does not
> require written consent to alternative means
> of participation.  Rather, it states that
> such alternative means may be considered as
> an option by the IEP team.

Memorandum at 10 (Oct. 30, 2023).  While a team member may only be excused from the meeting with the consent of a parent, it does not follow that parental consent is required for a participant to attend via alternative means such as by telephone.

Even if the local educational agency made a procedural violation in failing to request Luo's permission, the court finds upon consideration of the administrative record that Hearing Officer McElligot's decision adequately addressed any procedural failing of the local educational agency in failing to request Luo's permission for Dr. Robins to attend remotely.  The order required the parties to reconvene in order to discuss Dr. Robins' findings in-person.  This addressed Luo's concerns that Dr. Robins had not been capable of full participation while still ensuring that B.L. had an effective and productive IEP for the 2016-2017 academic year.  The IDEA's purpose to ensure cooperation between the local educational agency and the parents of a disabled child and to ensure that such children have a FAPE available to them was fulfilled.

Luo goes on to assert that "the IEP meeting failed to
comply with the procedural laws."  This is a conclusory
allegation and, as noted above, Hearing Officer McElligott
considered whether any failure to comply with procedure resulted
in a denial of a FAPE to B.L.  The court agrees with the Hearing
Officer's decision that no denial of a FAPE occurred.

Luo's list of errors includes his complaint that his
"opportunities to participate in the IEP meeting was
significantly impeded."  The Hearing Officer found that Luo was
"afforded an opportunity for meaningful participation at the
June 6th IEP meeting."  The court agrees with this finding.  Luo
was present at the meeting and was able to participate.  After
the IEP meeting, Schushke, the Director of Educational Programs
at Camphill, sought his input on the IEP draft and integrated
his proposed revisions.  To the extent that Luo was unable to
engage fully with the findings of Dr. Robins, Hearing Officer
McElligot rectified this procedural failing by requiring that
the IEP team meet once more to discuss the IEE report.

Luo asserts that the IEP is invalid because there was
"not a consensus reached at meeting" and that an IEP could not
be developed without reaching such consensus.  Hearing Officer
McElligott addressed this contention by requiring the parties to
hold an additional IEP meeting to further discuss the IEE.  The

court finds that this requirement was an appropriate avenue to encourage consensus.

Furthermore, a parent cannot force his or her preferred changes to be implemented via an IEP by insisting on consensus while withholding his or her own consent to the IEP team's proposals. Owen J. Roberts School District, as B.L.'s local educational agency, has the ultimate responsibility to ensure that he receives a FAPE via the services outlined in the IEP. See Assistance to States for the Education of Children with Disabilities and the Early Intervention Program for Infants and Toddlers with Disabilities, 64 Fed. Reg. 12406-01, 12473-74 (Mar. 12, 1999); see also White v. Ascension Parish Sch. Bd., 343 F.3d 373, 380 (5th Cir. 2003). The IDEA protects a parent's right to participate in the IEP team meeting and identify the best method for providing their child with a FAPE. It does not require that a local educational agency always implement parents' recommendations. See W.R. v. Union Beach Bd. of Educ., 414 F. App'x 499, 501 (3d Cir. 2011).

Luo complains that Ball never offered Luo the opportunity to review the final draft of IEP revision. He is incorrect. The administrative record shows that Luo was provided with an opportunity to review the final draft of the IEP revision on June 16 when it was provided to him, along with the NOREP. This constituted a "formal offer[ of] the IEP" for

-13-

his son, B.L.  At that point, Luo was free to, and in fact did, challenge the IEP through the due process complaint process.

Luo avers that Hearing Officer McElligott "on purpose denied Plaintiff's request to remove the unlawful revision made by Defendant Ball's request."  It is true that Hearing Officer McElligott did not remove all of the changes that Ball made to the IEP team meeting summary.  However, upon a review of the administrative record, the court finds that his decision was appropriate.  Hearing Officer McElligott amended the IEP such that Luo's additions were present in the IEP team meeting summary, rather than in a separate "parental input" section. Hearing Officer McElligot did not otherwise alter the non-substantive changes that Ball made to the IEP team meeting summary which neither concerned Luo's comments or input nor the substantive educational goals of B.L.  The court will not disturb McElligot's decision to allow Ball's remaining edits to stand.

Even if Owen J. Roberts School District had violated the procedures set forth under the IDEA by failing to secure Luo's permission for Dr. Robins to attend the meeting remotely, Luo fails to show that relief is warranted.  Luo cites Board of Education of Hendrick Hudson Central School District v. Rowley to contend that the court must apply a two-pronged inquiry to determine if a FAPE has been denied.  458 U.S. 176 (1982).  In

-14-

this action, the Court held that a court must consider first whether the state has complied with the procedures set forth in the IDEA and then consider whether the IEP "developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." Id. at 206-07.[6]  Failing either prong may result in a violation of the IDEA.  Luo argues that because the local educational agency has made a procedural violation, it has violated the IDEA and therefore, he is due compensatory education.

The inquiry, however, does not end here.  If parents allege that a procedural violation of the IDEA has denied their child a FAPE, they must show that the violation "results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits." D.S., 602 F.3d at 564-67.

Upon a thorough review of the administrative record, the court agrees with Hearing Officer McElligot that the procedural failure of the local educational agency in failing to secure Luo's informed consent to Dr. Robins' telephonic participation did not deny B.L.'s parents their ability to participate fully in the IEP team meeting or result in a loss of

---

6.   This standard has been modified.  Now, our Court of Appeals considers whether an IEP provides a "meaningful educational benefit." T.R. v. Kingwood Twp. Bd. of Educ., 205 F.3d 572, 577 (3d Cir. 2000).

FAPE for B.L.  In any event, the decision permitted Luo a second opportunity to review the IEE report with Dr. Robins along with the IEP team.  Thus, Luo has not shown by a preponderance of the evidence that Dr. Robins' failure to attend the IEP team meeting in person resulted in substantive harm to B.L.'s access to a FAPE.

Finally, there is no evidence in the record that Hearing Officer McElligot was biased or that he based his decision on improper grounds.  As stated above, Luo had the opportunity freely to question multiple witnesses, was given the opportunity to question witnesses after the School District had done so and was allowed to testify himself.  The Hearing Officer listened to Luo's concerns and permitted him to pursue lines of questioning to which the School District objected.

Upon the court's review of the administrative record, the court concludes that plaintiff failed to show by a preponderance of the evidence that Owen J. Roberts denied Luo's son a FAPE or that it significantly impeded Luo's opportunity to participate in the IEP team meeting.  Defendant's motion for judgment on the administrative record will be granted and plaintiff's cross-motion for judgment on the administrative record will be denied.